UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YOHANA, INC.,<br>2600 14th Street NW<br>Washington, D.C. 20009,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>c/o U.S. Attorney's Office<br>601 D Street NW<br>Washington, D.C. 20001,<br><br>  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. ___<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Yohana, Inc. d/b/a Amoco Quick Food Shoppe, 2600 14th Street, NW, Washington, D.C. 20009, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, and 5 U.S.C. § 552(a)(4)(B), hereby files this Complaint against Defendant United States of America alleges:

1. This action seeks judicial review of the Final Agency Decision ("FAD"), dated March 20, 2023, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on Amoco's participation as an authorized retailer in Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2. Plaintiff Yohana, Inc., is a resident and citizen of the District of Columbia.

3. Yohana, Inc., is the owner of the retail food store located at 2600 14th Street, N.W., Washington, D.C. 20009 ("Amoco").

4. Amoco is a "Retail Food Store" as such term is defined in 7 C.F.R. § 271.2.

5. Defendant United States of America is the federal government.

6. USDA is an executive branch department of the federal government.

7. FNS is an agency of the USDA.

8. FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9. Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 42 million Americans and more than 138,000 residents of the District of Columbia. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10. Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12. Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Amoco, the retail food store that is the subject of this action, is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

13. Amoco has exhausted any and all administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

14. Amoco is a convenience store that serves an impoverished community in northwest DC.

15. At all times relevant hereto, Amoco is and has been authorized by FNS to participate in SNAP as an authorized retailer.

16. At all times relevant hereto, Amoco has trained its employees regarding SNAP in accordance with FNS requirements.

17. At all times relevant hereto, Amoco properly supervised its employees, including regarding SNAP transactions and program requirements.

18. Amoco sells SNAP-eligible staple food items.

19. A majority of items sold at Amoco are SNAP-eligible items. Amoco also sells SNAP-eligible items, including disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper.

20. The Food and Nutrition Act does not define "common nonfood items."

21. FNS's SNAP regulations do not define "common nonfood items."

22. FNS has not issued any publicly issued guidance defining "common nonfood items."

23. Disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not "common nonfood items."

24. No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible at comparable prices.

25. At all times relevant hereto, Amoco is and has been authorized by FNS to redeem SNAP benefits. Amoco's FNS-issued SNAP authorization number is 3301508.

26. On November 17, 2022, FNS's Retailer Operations Division ("ROD") sent Amoco a letter charging the Store with accepting SNAP benefits in exchange for common non-food items, in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

27. The Charge Letter alleged that Amoco sold disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper in exchange for SNAP benefits ("EBT") on four occasions during October 2022 to an undercover FNS investigator.

28. On November 26, 2022, Amoco submitted its response to the Charge Letter. Amoco's response, *inter alia*, denied that it sold ineligible items in violation of FNS's SNAP regulations, requested issuance of a warning, and (in the alternative) requested that FNS assess a hardship civil monetary penalty ("Hardship CMP") in lieu of the term disqualification.

29. On December 9, 2022, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations took place, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participation in SNAP for six months.

30. The Initial Determination, which consisted of a two-page form letter, advised that FNS found that "the violations cited in our charge letter occurred at your firm." The Initial Determination also denied Amoco's CMP request because "[w]e have determined that you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

31. On December 18, 2022, Amoco timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

32. On January 27, 2023, Amoco submitted its response in support of its Request for Administrative Review of the Initial Determination ("Amoco's Response").

33. Amoco's Response requested that FNS's Administrative Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP. Amoco's Response was supported by a declaration from Negesti Tekle, Amoco's owner.

34. On March 20, 2023, FNS Administrative Review Officer ("ARO") Lorie Conneen issued the FAD. A copy of the FAD is attached hereto as Exhibit A.

35. In its FAD, FNS rejected all of Amoco's arguments, notwithstanding the voluminous evidence submitted by the Store, and affirmed the Initial Determination which imposed a six-month term disqualification from SNAP upon Amoco.

36. The FAD failed to address rejected Amoco's argument that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not "common nonfood items."

37. The FAD rejected Amoco's argument that the management of the Store was not careless and did not poorly supervise its employment, concluding without any basis that "[t]he more likely explanation is that store ownership and/or management failed to properly train and subsequent supervise the employees."

38. The FAD failed to address Amoco's argument that a warning was appropriate.

39. The FAD rejected Amoco's argument that a CMP was appropriate, noting only that "Agency mapping systems document that there are 49 SNAP authorized stores of comparable or larger size located within a 1.0 mile radius of the Appellant firm . . ." The FAD contained no discussion or analysis of whether any of those 49 SNAP-authorized stores carried as large a variety of staple food items at comparable prices."

## FNS's SNAP REGULATIONS

40. Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sectioned for accepting SNAP benefits in exchange for "*common nonfood items due to carelessness or poor supervision*" (emphasis added) is a six-month term disqualification from participation in SNAP.

41. FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

42. Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

43. Plaintiff Amoco repeats and re-alleges paragraphs 1 through 42 as if fully set forth herein.

44. Amoco denied the allegations in the Charge Letter during administrative proceedings and again denies that it engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

45. Amoco did not sell any "common nonfood items" in exchange for SNAP benefits.

46. At no time did Amoco poorly supervise its employees.

47. No evidence in the Administrative Record exists that supports FNS's determination that Amoco poorly supervised its employees.

48. At no time did Amoco act carelessly in permitting common nonfood items to be sold in exchange for SNAP benefits.

49. No evidence in the Administrative Record exists that supports FNS's determination that Amoco acted carelessly in permitting common nonfood items in exchange for SNAP benefits.

50. FNS's determination that Amoco sold "common nonfood items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

51. FNS's determination that Amoco poorly supervised its employees was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

52. FNS's determination that Amoco acted carelessly in permitting "common nonfood items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

53. FNS's six-month disqualification of Amoco from participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

54. FNS's six-month disqualification of Amoco from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

55. FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

56. FNS's six-month disqualification of Amoco from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

57. FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Amoco resided.

58. FNS officials and employees did not visit other SNAP-authorized stores in the vicinity during October 2022.

59. FNS did not conduct a comparison of prices of staple food items at Amoco and other SNAP-authorized stores in the vicinity during October 2022.

60. FNS's six-month disqualification of Amoco from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Amoco resided,

was not based on any store visits to other SNAP-authorized retailers in the vicinity during October 2022, and was not based on a comparison of prices of staple food items at Amoco and other SNAP-authorized stores in the vicinity during October 2022.

61.     FNS's six-month term disqualification of Amoco from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview a single SNAP beneficiary whose EBT card was used at the store.

62.     FNS's six-month term disqualification of Amoco from participating in SNAP was improper because it was not based on evidence that Amoco poorly supervised its employees.

63.     FNS's six-month term disqualification of Amoco from participating in SNAP was improper because FNS had no evidence that Amoco acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

64.     FNS's denial of Amoco's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

65.     FNS's denial of Amoco's request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

66.     FNS's failure to issue a warning to Amoco based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

67.     FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

68.     FNS's denial of Amoco's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

69. FNS's denial of Amoco's request for a Hardship CMP based, in whole or in part, upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

70. At no time did FNS provide Amoco with a warning that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not eligible for the redemption of SNAP benefits prior to issuance of the Charge Letter.

71. FNS should have provided Amoco with a warning that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

72. FNS should have provided Amoco with a warning that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not eligible for the redemption of SNAP benefits after the first alleged violation.

73. In the event that FNS provided Amoco with a warning that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not eligible for the redemption of SNAP benefits after the first alleged violation, no further violations would have occurred.

74. In the event that FNS provided Amoco with a warning that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are not eligible for the redemption of SNAP benefits after the first alleged violation, Amoco would have re-trained its employees regarding SNAP requirements.

75. FNS has no basis to have concluded that disposable cups, kitchen bags, aluminum foil, scrub sponges, liquid hand soap, dryer sheets, laundry detergent, and toilet paper are "common nonfood items."

76. A SNAP retailer charged with the exchange of common nonfood items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staples at comparable prices.

77. Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at Amoco or any other SNAP-authorized retailer in the vicinity.

78. Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at Amoco or any other SNAP-authorized retailer in the vicinity.

79. No other SNAP-authorized retailer sells as wide an array of SNAP-eligible items at comparable prices as at Amoco.

80. FNS's decision to deny Amoco's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

81. FNS's decision to deny Amoco's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

82. FNS's decision to deny Amoco's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

83. Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

84. Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

85. 7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling **as large a variety of staple food items at comparable prices**." (emphasis added).

86. FNS, in issuing the FAD, relied upon records and other information in FNS's possession that were never provided to Amoco.

87. In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

88. FNS uses a one-mile radius for determining whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

89. FNS calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

90. No factual support exists for FNS's decision to deny Amoco's request for a Hardship CMP.

91. FNS relied upon undisclosed analyses, including of other SNAP-authorized retail food stores, which were never provided to Amoco.

92. The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to Amoco.

93. The FAD is FNS's final administrative determination that its six-month disqualification of Amoco from participation as an authorized SNAP retailer was properly imposed.

94. The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

95. Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act and the evidence is not limited to the administrative record prepared by FNS.

96. The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

97. FNS incorrectly determined that Amoco was not eligible for a Hardship CMP, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

98. FNS's denial of Amoco's request for a Hardship CMP was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

99. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Amoco.

100. Plaintiff respectfully requests a *de novo* review of FNS's FAD which affirmed the term disqualification of Amoco from SNAP and determined that the alleged violations took place.

101. Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

102. Plaintiff respectfully requests a *de novo* review of FNS's FAD which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

WHEREFORE, Plaintiff Amoco respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

    (a) Reversing the FAD;

    (b) Vacating FNS's Initial Determination;

    (c) Preliminarily enjoining FNS from disqualifying Amoco from participating in SNAP during the pendency of this action;

(d) Permanently enjoining FNS from denying Amoco authorization to participate in SNAP based upon the Initial Determination and the FAD;

(e) In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in an amount consistent with FNS's regulations;

(f) Awarding Amoco an amount equal to its reasonable attorneys' fees and costs, including pursuant to the Equal Access to Justice Act; and

(g) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 28th day of March 2023.

By:   /s/ Stewart D. Fried
Stewart D. Fried, Esq.
D.C Bar No. 457801
Olsson Frank Weeda Terman Matz PC
2000 Pennsylvania Avenue, N.W.
Suite 4003
Washington, D.C. 20006
(202) 518-6326 – Direct Dial
(202) 234-3550 – Facsimile
sfried@ofwlaw.com

*Attorneys for Plaintiff Yohana, Inc.*